

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-17-00364-CV

**IN THE INTEREST OF J.L.B., ET AL.**

From the 73rd Judicial District Court, Bexar County, Texas
Trial Court No. 2016PA00174
Honorable Richard Garcia, Judge Presiding

Opinion by:     Irene Rios, Justice

Sitting:          Karen Angelini, Justice
                  Rebeca C. Martinez, Justice
                  Irene Rios, Justice

Delivered and Filed: November 1, 2017

AFFIRMED

This is an accelerated appeal from an order terminating appellant-Mother's and appellant-Father's parental rights to their two children, J.L.B. and K.R.B. Mother presents two issues, and Father presents one issue, challenging the legal and factual sufficiency of the evidence to support the trial court's termination findings under Chapter 161 of the Texas Family Code. We affirm the trial court's termination order.

## BACKGROUND

On January 15, 2016, the Texas Department of Family and Protective Services ("the Department") received a referral alleging neglectful supervision against Mother because Mother tested positive for cocaine and marijuana at the time of J.L.B.'s birth. The referral indicated J.L.B is the youngest of Mother's four children and noted Mother did not have custody of the other three

children. Upon validating the referral and based upon the parents' history with the Department, the Department filed its original petition on January 26, 2016.

Following an adversary hearing held on March 1, 2016, the trial court signed a temporary order assigning the Department as temporary managing conservator of J.L.B. The trial court ordered Mother to comply with the requirements of the service plan, and Mother was allowed twice-monthly supervised visitation with J.L.B., which was contingent upon negative drug testing results. The trial court also ordered that Mother and Father complete a domestic violence course. The Department placed J.L.B. in foster care. The record indicates the March 1, 2016 temporary order did not address K.R.B. because she was already in the custody of her paternal grandmother as the result of the parents' previous Department involvement.

On June 10, 2016, the Department received a referral alleging neglectful supervision of K.R.B. against Father because Father was arrested during a traffic stop for possessing "a pound" of heroin. The referral alleged K.R.B. was living in the same residence as Father that was "raided" subsequent to Father's arrest, and in which law enforcement officers discovered evidence of drug packaging and distribution. Upon validating the referral, the Department filed an amended petition to terminate Mother's and Father's parental rights to both J.L.B. and K.R.B on June 15, 2016.

Following an adversary hearing held on June 28, 2016 regarding K.R.B., the trial court signed a temporary order assigning the Department as temporary managing conservator of K.R.B. and assigning Mother and Father as temporary possessory conservators with limited access. J.L.B. remained in foster care. The Department removed K.R.B. from the paternal grandmother's custody and initially placed K.R.B. in emergency care. The Department subsequently placed the siblings in foster care together with fictive kin recommended by Mother. The fictive kin placement was unsuccessful, and the Department moved the children into foster care.

Following status and permanency hearings, the parties tried the case to the bench on March 10, 2017, March 23, 2017, and April 12, 2017. Mother and Father were both present at trial via teleconference. Both Mother and Father were represented by court-appointed counsel and testified on their own behalf. The trial court also heard testimony from Department investigator Jacqueline Jones and Department caseworkers Belinda Miller and Isaiah Crowe, IV.

After the receipt of evidence and testimony, the trial court rendered judgment terminating Mother's parental rights to each child pursuant to Texas Family Code sections 161.001(b)(1)(D), (E), (N), (O), (P), and (R) and Father's parental rights to each child pursuant to Texas Family Code sections 161.001(b)(1)(D), (E), (N), (O), and (Q). The trial court also found termination of Mother's and Father's parental rights to be in the best interest of the children, pursuant to Texas Family Code section 161.001(2).

Mother and Father appeal separately.

## ANALYSIS

Mother contends the evidence is legally and factually insufficient to support the trial court's finding of statutory grounds for termination of her parental rights to J.L.B. and K.R.B. pursuant to Texas Family Code sections 161.001(b)(1)(D), (E), (N), (O), (P), and (R). Mother additionally contends the evidence is legally and factually insufficient to support the trial court's finding that termination of her parental rights is in the best interest of the children. *See* TEX. FAM. CODE ANN. §§ 161.001(b) (2) (West Supp. 2016). Father contends the evidence is legally and factually insufficient to support the trial court's finding that termination of his parental rights is in the best interest of the children. *See id.*

### Standard of Review

To terminate parental rights pursuant to section 161.001 of the Code, the Department has the burden to prove: (1) one of the predicate grounds in subsection 161.001(b)(1); and (2) that

termination is in the best interest of the child. *See* TEX. FAM. CODE ANN. § 161.001 (West Supp. 2016); *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). The applicable burden of proof is the clear and convincing standard. TEX. FAM. CODE ANN. § 161.206(a) (West 2014); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007.

In reviewing the legal sufficiency of the evidence to support the termination of parental rights, we must "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d at 266. "[A] reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *Id.* "A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.*

In reviewing the factual sufficiency of the evidence to support the termination of parental rights, we "must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing." *Id.* "A court of appeals should consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *Id.* "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.*

***Statutory Grounds for Termination – Mother's Appeal***

*Termination Based on Section 161:001(b)(1)(E): Endangerment*

Mother argues the Department failed to present evidence Mother demonstrated a voluntary, deliberate, and conscious course of conduct endangering the children's physical and emotional well-being.

Under subsection (E), the trial court was required to find, by clear and convincing evidence, that Mother "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(E). The term "endanger" means that the child was exposed to loss or injury or jeopardized. *In re T.N.S.*, 230 S.W.3d 434, 438 (Tex. App.—San Antonio 2007, no pet.). Endangerment encompasses more "than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment." *In re S.M.*, 389 S.W.3d 483, 491 (Tex. App.—El Paso, 2012, no pet.) (quoting *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987)). Likewise, while endangerment often entails physical endangerment, the statute does not require that conduct be directed at a child or cause actual harm, rather, it is sufficient if the conduct endangers the emotional well-being of the child. *Id*. Thus, the court's inquiry encompasses acts that endanger a child's physical or emotional well-being or both. *Id*.

The relevant inquiry for termination under Subsection (E) is whether evidence exists that the endangerment was the direct result of the parents' conduct, including acts, omissions, or failures to act. *Id*. Termination requires a voluntary, deliberate and conscious course of conduct; it must be based on more than a single act or omission. *Id*. It is not necessary that the parents' conduct be directed at the child or that the child actually suffer injury. *Id.*; *In re T.N.S.*, 230 S.W.3d at 439. The specific danger to a child's well-being need not be established as an independent

proposition, but may be inferred from parental misconduct. *In the Interest of N.K.*, 99 S.W.3d 295, 300 (Tex. App.—Texarkana 2003, no pet.).

Evidence of criminal conduct, convictions, and imprisonment and their effect on a parent's life and ability to parent may establish an endangering course of conduct. *In re J.T.G.*, 121 S.W.3d 117, 133 (Tex. App.—Fort Worth 2003, no pet.). Imprisonment alone does not constitute an endangering course of conduct but it is a fact properly considered on the endangerment issue. *In re R.W.*, 129 S.W.3d 732, 743-44 (Tex. App.—Fort Worth 2004, pet. denied); *see In the Interest of S.D.*, 980 S.W.2d 758, 763 (Tex. App.—San Antonio 1998, pet. denied) (Routinely subjecting children to the probability that they will be left alone because their parent is in jail endangers the children's physical and emotional well-being.). However, because a parent's illegal drug use exposes her children to the possibility the parent may be impaired or imprisoned, evidence of illegal drug use supports a finding that the parent engaged in a course of conduct that endangered the children's physical or emotional well-being. *In re A.M.*, 495 S.W.3d 573, 579 (Tex. App.—Houston [1st Dist.] 2016, pet. denied).

In this case, the record reflects Mother exposed J.L.B. to drugs in utero, and J.L.B. experienced significant withdrawal symptoms. Mother admitted to Department investigator Jones she used both marijuana and cocaine during her pregnancy. However, this was not the only indication of Mother's drug use. Mother testified she successfully completed a drug treatment program during the pendency of a Department case involving her two older children. However, the record includes a recitation of Mother's criminal history immediately prior to the underlying case, indicating Mother's continued drug use despite completion of the treatment program. Mother was arrested in July 2015 for possession of a controlled substance and in August and October 2015 for possession of marijuana. Mother admitted K.R.B. had been placed in the custody of her paternal grandmother because of Mother's and Father's drug issues. Further, after the Department

initiated the underlying case, Mother was arrested on March 10, 2016 for possession of a controlled substance.

Following her March 2016 arrest, Mother was incarcerated in the LaSalle County Jail for ninety days. Following her release in June 2016, she was once again arrested on December 5, 2016 pursuant to a motion to revoke probation for failure to appear. Later in December 2016, Mother entered a Substance Abuse Felony Punishment Facility (SAFPF) as a condition of her probation. Mother testified she attended NA and AA meetings while in the SAFPF unit and "learned a lot." Mother anticipated her release date to be July 12, 2017, after which she would be required to stay at a halfway house for forty-five days, followed by six additional months of community supervision.

During the pendency of the underlying case, Mother was arrested twice in fourteen months and spent approximately seven months incarcerated. Additionally, the record reflects Mother continued to use illegal drugs despite knowing her parental rights were at risk. Although Mother completed a drug treatment program in the past, she continued to use illegal drugs, even during her pregnancy, which resulted in incarceration.

Viewing all the evidence in the light most favorable to the trial court's judgment, we conclude a reasonable trier of fact could have formed a firm belief or conviction Mother engaged in conduct which endangered the physical or emotional well-being of the children. Thus, the evidence is legally sufficient to support this finding. Based upon the same evidence and conclusions, the evidence is also factually sufficient to support the trial court's termination finding under Section 161.001(b)(1)(E).

Having determined the evidence is legally and factually sufficient to support the trial court's finding on this statutory ground, we need not consider whether the evidence would support subsections (D), (N), (O), (P), or (R). *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003) (affirming

determination based on one predicate without reaching second predicate found by factfinder and challenged by parent).

### Best Interests of the Children

Mother and Father each challenge the sufficiency of the evidence to support the jury's finding that termination of their parental rights is in the children's best interests.

The Texas Supreme Court has enumerated the following factors to assist courts in evaluating a child's best interest: (1) the desires of the child; (2) the present and future emotional and physical needs of the child; (3) the present and future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans held by the individuals seeking custody of the child; (7) the stability of the home of the parent and the individuals seeking custody; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). The foregoing factors are not exhaustive, and "[t]he absence of evidence about some of [the factors] would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest." *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). "A trier of fact may measure a parent's future conduct by his past conduct and determine whether termination of parental rights is in the child's best interest." *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied).

Turning to the evidence regarding the best interest of the children, we consider the Holley factors as outlined above in relation to both Mother's and Father's appeals.

### Desires of the Children

At the time of the trial in this case, J.L.B. was seventeen months' old and K.R.B. was approximately four and a half years' old; both children were too young to verbally communicate

their desires. Department caseworker Crowe testified K.R.B. had bonded with her foster parents and J.L.B. was happy in the foster home. Crowe described an unannounced visit during which he found both children appearing well-cared for and happy. Crowe testified that when the foster father arrived home, K.R.B. ran to the foster father, jumped up, and hugged him. Crowe additionally testified K.R.B. called the foster father "dad." *See In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (a factfinder may consider whether a child has bonded with her caregiver and is well-cared for when a child is too young to express her desires).

Mother testified she last saw J.L.B. in early December 2016 when the child was taken to her place of work by the fictive kin. The trial court also heard testimony that the children's paternal grandmother allowed the parents unauthorized access to K.R.B. before K.R.B. was removed from her custody. Caseworker Miller testified Father visited with J.L.B. "two to three times" but was nervous during the visits and did not attempt to care for the baby. According to Miller, neither parent exhibited compliance with their service plans nor maintained a bond with J.L.B. Crowe testified that Father was incarcerated from the time Crowe was assigned to the case in July 2016. Crowe additionally testified that during his time working on the case, Mother had no authorized visits with the children.

### Emotional and Physical Danger

"As a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child." *In re R.W.*, 129 S.W.3d at 739. A factfinder may consider a parent's history with other children when considering the risks or threats of a parent's environment. *In re E.A.F.*, 424 S.W.3d 742, 751 (Tex. App.—Houston [14th Dist.] 2014, pet. denied).

The record shows that apart from the current Department involvement, Mother and Father have prior history with the Department. The Department received two prior referrals alleging

neglectful supervision and physical neglect of K.R.B. Each referral was verified and designated "reason to believe." In one of the cases, the Department presented evidence of significant cocaine abuse, domestic violence, and unsanitary home environment.

As noted above, Mother's instant involvement occurred because Mother tested positive for both cocaine and marijuana at the time of J.L.B.'s birth. J.L.B.'s urine taken at birth also tested positive for cocaine and marijuana, and Miller and Jones both testified they observed J.L.B. experiencing withdrawal symptoms. Miller stated the symptoms continued until J.L.B. was approximately six months' old. During the investigation regarding the referral received at J.L.B.'s birth, Father admitted to Jones he also used marijuana and that he and mother had a history of domestic violence, with the most recent physical altercation happening "several" months prior to J.L.B.'s birth.

The record also references a pending Department investigation involving Father in regard to K.R.B. Father was arrested for aggravated assault and endangering a child because he caused an automobile accident when he attempted to chase down someone who was running from him. K.R.B. was in Father's vehicle when the incident occurred. Father's instant Department involvement occurred when Father was arrested for possession of heroin with intent to deliver. In the course of the investigation, the Drug Enforcement Agency raided the residence where Father was living and found additional drugs in the kitchen, along with scales, baggies, and other drug paraphernalia elsewhere in the house. Investigators informed the Department investigator that the evidence suggested packaging and distribution of illegal drugs happened in the house. K.R.B. was living in that same house with her paternal grandmother and was present when the raid occurred.

The trial court had before it evidence of Father's criminal history. In addition to the drug-involved cases, Father admitted to past association with a criminal street gang. The record also

indicates father had prior arrests for driving while intoxicated, criminal mischief, burglary of a habitation, and two assaultive offenses.

*Parent's Acts or Omissions, Availability of Programs*

The evidence shows that despite the availability of programs, Mother and Father did not complete the services required by their family service plan.

Although Father had a pending investigation regarding K.R.B., as discussed above, Father continued to use illegal drugs and engage in criminal activity. During the March 24, 2016 status hearing, the trial court ordered Father to undergo drug testing and drug court evaluation. The record shows that four of Father's nine drug test results returned positive for the presence of illegal drugs. Additionally, Father testified he was arrested in May 2016 for possession of methamphetamine with the intent to deliver and in June 2016 for possession of heroin with intent to deliver.

Prior to his arrests and subsequent incarceration, Father initiated services through the drug court but stopped attending and was discharged. According to Miller, she tried to have contact with Father once a month. Miller testified Father would make, but fail to keep, appointments. Additionally, Miller arranged for Father to complete parenting classes at Compadre Y Compadre, but Father did not attend any classes. Likewise, Miller arranged for counseling sessions for Father through Avalon, but Father attended only one session and did not return.

Crowe testified he arranged for Mother to complete services, and the record includes a copy of the letter Crowe provided Mother that lists the service providers. However, Mother did not complete any of the required services and missed each of her drug testing appointments. According to Crowe, Mother also failed to contact him when she was released from LaSalle County Jail.

Mother testified she was unable to initiate services in the LaSalle County Jail because services were not provided. Additionally, once she was released, she was not able to do so because she had "transportation issues." Mother further testified she was completing classes as part of the requirements of her SAFPF program. Father testified he completed a parenting class while incarcerated and would complete other services once he was sentenced and transferred to a permanent location.

*Plans for the Children*

Mother, testifying from a SAFPF unit where she was incarcerated as a condition of probation, told the trial court she had a full time job at a ranch/convenience store and transportation arranged for when she was released from the SAFPF unit and the halfway house. Mother was unsure where she would be living upon her release.

Father testified from a federal facility where he was awaiting sentencing for a conviction for possession of heroin with intent to deliver. Father testified his sentence was likely to be forty-one months pursuant to a plea arrangement, but could be sixty months if the sentencing court did not accept the plea arrangement. Father anticipated he would serve his sentence in either Bastrop or Three Rivers, however, he did not testify regarding post-incarceration plans or regarding plans for his children. Father offered the names of several family members with whom the children could be placed until his release. Crowe, however, testified as to the unsuitableness of each.

Crowe testified regarding the children's current placement, which is a foster-adopt placement. According to Crowe, the foster parents wished to adopt both children. As noted above, Crowe observed the children were happy and well-cared for in their current placement.

*Emotional and Physical Needs, Stability*

A child's need for permanence is a paramount consideration for the child's present and future physical and emotional needs. *See Dupree v. Tex. Dep't of Protective & Regulation Servs.*,

907 S.W.2d 81, 87 (Tex. App.—Dallas 1995, no writ). The goal of establishing a stable permanent home for a child is a compelling government interest. *In re M.A.N.M.*, 75 S.W.3d 73, 77 (Tex. App.—San Antonio 2002, no pet.). A factfinder may infer from a parent's past inability or unwillingness to meet a child's physical and emotional needs an inability or unwillingness to meet a child's needs in the future. *In re J.D.*, 436 S.W.3d at 118. Further, a factfinder is entitled to consider a parent's history of drug use in its determination. *In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009).

Both parents' history of illegal drug use, criminal activity, and incarceration has been detailed above. The evidence shows that because of her continued illegal drug use, at the time of trial Mother was incarcerated and unable to provide for the emotional and physical needs of her children. Mother's criminal history included prior arrests for possession of cocaine and marijuana. Mother's most recent arrest for possession of cocaine occurred in March 2016, during the pendency of the underlying case. The evidence also shows Father's continued criminal activity involving illegal drugs caused him to be incarcerated at the time of trial and unable to provide for the emotional and physical needs of his children as well. Father's arrests for possession of controlled substances with intent to deliver also occurred during the pendency of the Department's cases.

### *Conclusion*

After evaluating the evidence and testimony in light of the *Holley* factors and viewing the evidence in the light most favorable to the trial court's finding, we conclude the trial court could reasonably have formed a firm conviction that termination of Mother's and Father's parental rights to both J.L.B. and K.R.B. is in the children's best interest. Thus, the evidence is legally sufficient to support the trial court's finding. Based upon the same evidence and conclusions, the evidence

is also factually sufficient to support the trial court's finding that termination of Mother's and Father's parental rights is in the children's best interest.

## CONCLUSION

We affirm the trial court's order terminating Mother's and Father's parental rights.

Irene Rios, Justice